IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EOS POSITIONING SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| PROSTAR GEOCORP, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Eos Positioning Systems, Inc. ("Eos" or "Plaintiff"), by its attorneys, files this Complaint and Jury Demand against Defendant ProStar Geocorp, Inc. ("ProStar" or "Defendant"), and alleges as follows:

**NATURE OF ACTION**

1. This is an action for a declaratory judgment of non-infringement and invalidity of United States Patent Nos. 6,956,524 ("the '524 Patent"), 7,834,806 ("the '806 Patent"), 7,978,129 ("the '129 Patent"), 8,081,112 ("the '112 Patent"), and 8,144,058 ("the '058 Patent") (collectively "the Utility Locating Patents"), arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the patent laws of the United States, Title 35, United States Code.

2. The Utility Locating Patents are directed to the use of generic computers to track locations and/or collect location information—subject matter which has repeatedly been found ineligible for patent protection under 35 U.S.C. § 101.

3. The Utility Locating Patents are further directed to the abstract idea and century-old practice of "utility location," wherein the location of underground utilities is identified and communicated to others. For decades, humans have performed this activity using locate wands and by marking utility location on a map or the land itself with a physical marking such as paint

or flags.  The Utility Locating Patents implement this same abstract idea using a standard GPS device, running afoul of the bedrock principle that merely automating longstanding practices does not confer patent eligibility.

4.     Eos seeks relief from this Court because although the Utility Locating Patents are clearly ineligible for patent protection under 35 U.S.C. § 101, *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014), and Federal Circuit law, ProStar has repeatedly threated Eos that it intends to sue Eos for allegedly infringing the Utility Locating Patents.  Eos thus seeks declaratory judgments from this Court that it does not infringe any Utility Locating Patent and that each Utility Locating Patent is invalid and ineligible for patent protection under 35 U.S.C. § 101.

## PARTIES

5.     Plaintiff Eos Positioning Systems, Inc. is a corporation organized and existing under the laws of Quebec (Canada), with its principal place of business at 1181 Rue de l'Express, Terrabonne, QC J6W 0A2 Canada.

6.     Upon information and belief, Defendant ProStar Geocorp, Inc., is a corporation organized and existing under the laws of Delaware, having a principal place of business at 760 Horizon Drive, Suite 200, Grand Junction, Colorado 81506.  Upon information and belief, ProStar may be served via its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

## JURISDICTION AND VENUE

7.     This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201 based on a definite and concrete, real and substantial, justiciable controversy between Eos,

on the one hand, and ProStar, on the other hand, for the declaratory judgment of patent non-infringement and invalidity under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

8.      Defendant ProStar is subject to general personal jurisdiction in this District because it is incorporated in Delaware and thus resides in this District.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)-(c) because Defendant is subject to personal jurisdiction in this District and because a substantial part of the events giving rise to the claims herein occurred in this District.

## BACKGROUND

10.      The '524 Patent is entitled Method of Dynamically Tracking a Location of One or More Selected Utilities.  Attached hereto as Exhibit A is a true and correct copy of the '524 Patent.

11.      The '524 Patent states on its face that it issued on October 18, 2005 and lists Layne Daniel Tucker and Peter William Lylick as the inventors.

12.      The '524 Patent purports to claim priority to U.S. Pat. App. No. 10/358,429, which was filed on Feb. 3, 2003.

13.      Upon information and belief, the inventors purportedly assigned to Global Precision Solutions, LLP the right to enforce the '524 Patent, and Global Precision Solutions, LLP in turn assigned the right to enforce the '524 patent to the Defendant.

14.      The '806 Patent is entitled System and Method for Utility Asset Data Collection and Management.  Attached hereto as Exhibit B is a true and correct copy of the '806 Patent.

15.      The '806 Patent states on its face that it issued on November 16, 2010 and lists Layne D. Tucker, John Lepper, Daniel E. Colby, page Tucker, and Yom Y. Sawyer, Jr. as the inventors.

16.     The '806 Patent purports to claim priority to U.S. Pro. Pat. App. No. 60/589,307, which was filed on Jul. 20, 2004.

17.     Upon information and belief, the inventors purportedly assigned to Global Precision Solutions, LLP the right to enforce the '806 Patent, and Global Precision Solutions, LLP in turn assigned the right to enforce the '806 patent to the Defendant.

18.     The '129 Patent is entitled System and Method for Collecting and Updating Geographical Data.  Attached hereto as Exhibit C is a true and correct copy of the '129 Patent.

19.     The '129 Patent states on its face that it issued on July 12, 2011 and lists Tom Y. Sawyer, Jr., Mark Beckner, Page Tucker, and Scott Austin Jones as the inventors.

20.     The '129 Patent purports to claim priority to U.S. Pro. Pat. App. No. 60/868,502, which was filed on Dec. 4, 2006.

21.     Upon information and belief, the inventors purportedly assigned to Global Precision Solutions, LLP the right to enforce the '129 Patent, and Global Precision Solutions, LLP in turn assigned the right to enforce the '129 patent to the Defendant.

22.     The '112 Patent is entitled System and a System and Method for Collecting Information Related to Utility Assets.  Attached hereto as Exhibit D is a true and correct copy of the '112 Patent.

23.     The '112 Patent states on its face that it issued on December 20, 2011 and lists Layne D. Tucker, John Lepper, Daniel E. Colby, Page Tucker, and Tom Y. Sawyer, Jr. as the inventors.

24.     The '112 Patent purports to claim priority to U.S. Pro. Pat. App. No. 60/589,307 which was filed on Jul. 20, 2004.

25.     Upon information and belief, the inventors purportedly assigned to Global Precision Solutions, LLP the right to enforce the '112 Patent, and Global Precision Solutions, LLP in turn assigned the right to enforce the '112 patent to the Defendant.

26.     The '058 Patent is entitled System and System and Method for Collecting and Updating Geographical Data.  Attached hereto as Exhibit E is a true and correct copy of the '058 Patent.

27.     The '058 Patent states on its face that it issued on March 27, 2012 and lists Tom Y. Sawyer, Jr., Mark Beckner, Page Tucker, and Scott Austin Jones as the inventors.

28.     The '058 Patent purports to claim priority to U.S. Pro. Pat. App. No. 60/781,719, which was filed on Mar. 14, 2006.

29.     Upon information and belief, the inventors purportedly assigned to Global Precision Solutions, LLP the right to enforce the '058 Patent, and Global Precision Solutions, LLP in turn assigned the right to enforce the '058 patent to the Defendant.

**The Conventional Subject Matter Claimed in the Utility Locating Patents**

30.     The claims of the Utility Locating Patents are directed to the collection, storage, and display of data and specifically the abstract idea of "utility location," wherein underground utilities are located, location data is collected and then displayed on a generic GPS device.

31.     The purported inventions, which are directed to systems or methods for "tracking," "collecting," or "generating" data indicating the location of utilities is nothing more than a routine and known business method of mapping out underground power lines and pipes performed using generic computer and/or GPS devices.

32.     The abstract idea of "utility location" has been well known and practiced for over a century.  (*See, e.g*., Exs. F-G).  Specifically, using an electromagnetic device to determine the

location of underground utilities, such as buried wires or pipes, has been being practiced since at least 1910. (*See* Ex. G and image below). Once located, the underground utilities could be marked on a map or on the land itself. The purported invention of the Utility Locating Patents is to perform the century old practice of "utility locating" using a standard and known GPS device to mark the location on a generic display screen, rather than a physical map.[1]



Electromagnetic Detector For Buried Cables, taken in Germany in 1910.

33.     Defendant's own advertising material illustrates this well-known method of "utility locating" (shown in screenshot below) and describes the advantage of its system as a way of permanently documenting the location of these objects. ("PointMan, Precision Mapping Mobile Application" on Defendant's Youtube channel at https://youtu.be/ZKTPVuLemUU).

---

[1]     The image below appears in The Theory of Buried Cable and Pipe Location, Radiodetection (2017).



PointMan, Precision Mapping Mobile Application

653 views • Jun 18, 2021

👍 LIKE   👎 DISLIKE   ↗ SHARE   ≡+ SAVE   ...

🌐 ProStar                                                           SUBSCRIBE

34.     The last of the asserted Utility Locating Patents, the '058 Patent, issued on March 27, 2012.  Two years later, on June 19, 2014, the Supreme Court ruled that patents which merely "implement [an] abstract idea. . . on a generic computer" are not directed to patent eligible subject matter and are thus invalid.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014).

35.     Within a few months of *Alice*, patents substantially similar to the Utility Locating Patents were invalidated for attempting to claim the patent ineligible abstract idea of "utility location" implemented on generic devices.  *CertusView Techs., LLC v. S & N Locating Servs., LLC*, 111 F. Supp. 3d 688 (E.D. Va. 2015), *aff'd*, 695 F. App'x 574 (Fed. Cir. 2017).  As noted by the court in *CertusView*, the well-known method of utility locating or "locate operations" involved a technician identifying the location of underground objects including "power, gas, water, sewer,

or some other underground facility" using a 'locate wand' and then marking the location of these objects, such as with flags and/or paint. *Id*. at 693-694.   These "locate wands" have been in common use for decades, such as the Bell Laboratories version shown below from 1965.



1965 Bell Laboratories "Depthometer" Locator Wand. <u>Bell Laboratories Record</u>, Young (1965).

36.    The *CertusView* court held that the method of collecting this location data and storing it on generic memory to be displayed on a generic display was "directed to the abstract idea of creating computer-readable files to store information, as applied in the particular technological environment of conducting a locate operation." *Id*. at 709.   Specifically, the court stated that "[a]t their core, the elements of Claim 1 involve: A) electronically receiving information, to include an image of the dig area; B) displaying such information, including the

image, on a display device; C) adding a digital representation of physical locate marks to the image; and D) electronically transmitting and/or storing non-image data relating generally to a locate operation to create a computer-readable file including information related to a locate operation." *Id*. The claims were thus held invalid as simply configuring generic computer components to execute the abstract idea. *Id*. The claims at issue here are directed to using generic computer components to perform this same abstract method of storing and displaying utility location data.

37.     The claims of the '524 Patent are directed to a system that employs generic components such as a controller, memory, a display, and a GPS device. The claimed functions concern a basic connection between these generic components.

38.     For example, the '524 Patent claims a system for tracking a location of one or more selected utilities, the system comprising:

a controller having a memory for storing a series of global positioning system (GPS) co-ordinates for the selected utilities within an assigned service area of a municipality;

a display coupled to the controller and for displaying an icon; and

a GPS co-ordinate device coupled to the display via the controller;

wherein the GPS co-ordinate device dynamically provides its GPS co-ordinates to the controller as positioning of the GPS co-ordinate device changes location, such that the relative position of the GPS co-ordinate device to the selected utilities is always known; and

wherein the icon is locked on to a closest of the selected utilities within a pre-determined area of interest.

39.     The claims thus require "a controller having memory," "a display coupled to the controller," and "a GPS co-ordinate device"—fundamental components conventionally known, ubiquitously used and widely established well before February 3, 2003,[2] the earliest application to which the '524 Patent claims priority.  Further, the above claim recites nothing other than taking a generic GPS device and adding an "icon. . . locked on to a closest of the selected utilities" to the displayed map image. Or, as described by the court in *CertusView*, "adding a digital representing of a physical locate marks to the image [of the dig area]." *Id*.  The remaining claims of the '524 Patent are all directed to the same abstract idea of "utility locating" and merely recite different conventional GPS components/features.  Neither the claims nor the specification recite any improvements or modifications to the conventional GPS devices disclosed therein.

40.     The claims of the '806 Patent are similarly directed to a system that employs generic components such as a GPS receiver, a processor, a display, a location determining device, and a database to perform "utility locating."  The claimed functions concern basic connection between these generic components.

41.     For example, the '806 Patent claims a system for collecting utility location information comprising:

GPS receiver for identifying a current location;

a processor configured to process input data for defining a project including a project area, project criteria, rules applied to the project and data accessibility rights, retrieve a GIS landbase template including map imagery and infrastructure from a database,

---

2       Hand-held GPS devices with controllers, memory, and displays have existed since the 1980s (e.g., the Magellan NAV 1000).  By February 3, 2003 incredibly well known personal GPS devices with controllers, memory, and displays had been on the market for years, including the Garmin StreetPilot (introduced in 1998) and the TomTom Navigator (released in 2001).

and integrate an imagery of the project area with the current location to generate an image representation of the project area in real time;

a display for displaying the image representation of the project area comprising the current location as a moving map;

a location determining device for obtaining the location of an identified utility asset in accordance with the displayed representation of the project area, wherein the processor is further configured to integrate the obtained location with the GIS landbase template including the map imagery and the infrastructure to create a precision grid including the location of the utility asset the map imagery and the infrastructure;

a first database for storing the precision grid; and

a database management module for managing usage and distribution of the stored precision grid utilizing the defined project criteria, rules applied to the project and data accessibility rights.

42.     The claims thus require "a processor configured to process input data," "a display," "a GPS receiver," "a database" for storing data.  These are the same fundamental components conventionally known, ubiquitously used and widely established in off the shelf GPS devices recited in the '524 Patent and available well before July 20, 2004, the earliest application to which the '806 Patent claims priority.  The above claim recites nothing other than taking known GPS and location data, compiling it in a database, and displaying the data on a generic display. This idea of "collecting, displaying, and manipulating data" using generic hardware has been consistently found invalid by courts in light of *Alice*.  *See, e.g., Intellectual Ventures I v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017). "Collecting, displaying, and manipulating data" is

even used as one of the textbook examples of a patent ineligible abstract idea by the USPTO in reviewing claims after *Alice*.  *See* MPEP 2106.

43.     Neither the claims nor the specification of the '806 Patent recite any improvements or modifications to the actual GPS devices used.  Indeed, the specification directs one skilled in the art to use conventional, off the shelf devices including "portable computers, PDAs and cell phones" to perform the same abstract idea of "utility locating."  (Ex. B at col. 13, lines 4-5).

44.     The claims of the '129 Patent are similarly directed to the collection, display, and manipulation of data for "utility location."   The claims either recite no hardware or at most a generic "database" and a "display screen," and no disclosed improvement in either one.

45.     For example, the '129 Patent claims a method for generating a GIS data transaction including information about a topography of a region and utilities within the region, the method comprising:

provide providing information about the topography of the region;

receiving information about a user collecting data related to one or more utilities in the region;

receiving information about time and date of the collected data;

receiving information about each of the utilities;

receiving information about location of each of the utilities;

receiving information about the manner of collecting data;

receiving information about revisions made to the information about the topography; and

integrating the received information with the information about the topography of the region into a GIS data transaction.

46.     The '129 Patent claims thus do not require any hardware and purport to read on any person performing the abstract idea of "utility location."  Not only are these claims directed to an abstract idea, they recite a purely mental process that a human being could perform, including "receiving information."  The claims recite nothing other than receiving known data and compiling it and, in dependent claims, displaying the data on a generic display. As discussed above, the idea of "collecting, displaying, and manipulating data" using generic hardware has been consistently found invalid by courts in light of *Alice*. *Intellectual Ventures*, 850 F.3d at 1340.  Neither the '129 claims nor the specification recite any improvements or modifications to the actual technology used.  Indeed, the specification directs one skilled in the art to use conventional, off the shelf devices including "a Personal Computer (PC), a lap top computer, a personal digital assistant (PDA), a mobile phone, or the like[,]" (Ex. C at col. 3, lines 50-52) to perform the same abstract idea of "utility locating."

47.     The claims of the '112 Patent are similarly directed to a method of receiving and displaying data and a system that employs generic components such as a GPS receiver, a processor, a display, a location determining device, and a database to do the same.

48.     For example, the '112 Patent claims a method for collecting information related to utility assets, the method comprising:

> determining a position of an underground utility asset by underground imaging;
>
> in substantially real time, integrating location data from a GPS receiver with the determined position of the underground utility asset to provide information about depth, longitudinal and latitudinal coordinates of the position of the underground utility asset;
>
> adding characteristics of the underground utility asset including a size of the underground utility asset, to the integrated data to generate one or more data records for

the underground utility asset including the information about depth, longitudinal and latitudinal coordinates of the position of the underground utility asset;

in substantially real time, integrating landbase data with the one or more data records for the underground utility asset; and

in substantially real time, displaying a scrolling map including the one or more data records and a portion of the landbase data.

49.   The claims of the '112 Patent again utilize the same generic GPS components as discussed above to perform the same abstract idea of "utility location."

50.   The claims of the '058 Patent are similarly directed to a method of receiving and displaying data and a system that generically employs "one or more computers" to do the same.

51.   For example, Claim 1 of the '058 Patent claims a method executed on one or more computers for generating a geographical data transaction including information about a topography of a region and utilities within the region, the method comprising:

electronically receiving information about the topography of the region;

electronically receiving information from a user collecting data related to one or more utilities in the region;

electronically receiving information about time and date of the collected data;

electronically receiving information about each of the utilities;

electronically receiving information about location of each of the utilities;

electronically receiving information about revisions made to the information about the topography; and

electronically integrating the received information with the information about the topography of the region into a geographical data transaction, wherein the geographical data transaction is utilized to manage said utilities within said region.

52.     The claims of the '058 Patent are thus simply another description of the abstract idea of "utility locating" with the word "electronically" added before each step to tie the method to a generic "one or more computers."

53.     However, merely computerizing or automating a longstanding practice does not make the longstanding practice or underlying abstract idea patent eligible in the United States.

54.     Given the ubiquity of the claimed components, connections and steps in the Utility Locating Patents over the century old practice of "utility locating," the Utility Locating Patents cannot transform the underlying patent-ineligible abstract idea upon which they are based into a patent-eligible invention.  The Utility Locating Patents' wholly generic computer implementation represents nothing more than a drafting effort designed to monopolize the abstract idea itself.

**Defendant's Attempts to Exploit Clearly Invalid Patents**

55.      On or about May 25, 2021, counsel for Defendant wrote to Eos asserting that Defendant owned a number of patents, specifically the letter listed 14 patents, that it claimed were "relevant" to Eos' products. (Ex. H).  The letter did not provide any analysis of how any Eos Products infringed any of the 14 listed patents. (*Id*.)  However, it did impose a 14-day response deadline to begin discussing licensing of the patents. (*Id*.).

56.     On June 10, 2021, counsel for Eos replied to the May 25 Letter informing Defendant that it was assessing the allegations.  (Ex. I).

57.     On June 30, 2021, counsel for Eos replied to the May 25 Letter informing Defendant that Eos was declining the invitation to license the patents.  (Ex. J)  The June 30 Letter

further informed Defendant that even a preliminary analysis revealed that Eos was only practicing widely known methods that had been "standard practice for decades." (*Id.*).  The letter further informed Defendant that any purportedly narrower limitations of the listed patents were not infringed by Eos. (*Id.*).

58.     Despite the June 30 Letter, Defendant has persisted in attempting to use the Utility Locating Patents to monopolize the abstract idea of "utility locating."

59.     On or about February 2, 2022, counsel for Defendant wrote to Eos asserting that Eos, directly or indirectly, infringes the Utility Locating Patents.  (Ex. K).  The February 2 letter did not dispute Eos's identification of a clear defect in the validity of these patents—*i.e.*, the improper attempt to monopolize a decades old common practice—instead, Defendant retorted that this issue "falls on deaf ears." (*Id.*).

60.     Further, instead of rebutting the fact that the Utility Locating Patents claim decades-old activities which have long been performed prior to GPS—Defendant asserted that "any attempt at invalidating them would be an expensive and time-consuming process." (*Id.*)  This was a transparent attempt by Defendant to extract from Plaintiff a nuisance fee by asserting a frivolous claim based on invalid patents. (*Id.*)

61.     On information and belief, Defendant relies on "deaf ears" to remain willfully ignorant of the Utility Locating Patents' clear invalidity under 35 U.S.C. § 101 and *Alice,* and seeks an undeserved payday based not on the merits of any claim, but instead on the cost of litigation.

62.     The February 2 Letter further included a threat to "file in the Central District of California" should Eos refuse to pay the nuisance fee, and attached a draft complaint alleging infringement of the Utility Locating Patents in the District of Colorado.  (Ex. K).  The threat of

either of these actions creates an actual controversy within the jurisdiction of this Court under 28 U.S.C. § 2201 and 2202.

63.     The February 2 Letter and claim charts attached thereto from Defendant identified Eos Arrow Series™, Eos Tools Pro™, and Eos Locate™ (collectively "Eos Products") as allegedly infringing the Utility Locating Patents.

## COUNT I – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '524 PATENT

64.     Eos incorporates each of the preceding paragraphs 1-63 as if fully set forth herein.

65.     Eos has not infringed, is not now infringing, and has not threatened to infringe the '524 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

66.     Use of the Eos Products does not infringe the '524 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

67.     Eos has not contributed to infringement and is not now contributing to any infringement of the '524 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

68.     Eos has not induced others to infringe and is not now inducing others to infringe the '524 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

69.     Offering the Eos Products for sale does not induce others to infringe the '524 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

70.     The manufacture, use, sale or offer for sale of the Eos Products has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid or enforceable claim of the '524 Patent.

71.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

72.     A judicial declaration is necessary and appropriate so that Eos may ascertain that making, selling and using its products does not infringe the '524 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

73.     Eos is entitled to a declaratory judgment that Eos and the Eos Products do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claims of the '524 Patent under 35 U.S.C. § 271.

## COUNT II – DECLARATORY JUDGMENT OF INVALIDITY OF THE '524 PATENT

74.     Eos incorporates each of the preceding paragraphs 1-73 as if fully set forth herein.

75.     Eos alleges that each of the claims of the '524 Patent is invalid for failing to comply with the conditions and requirements for patentability as set forth in Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

76.     Specifically, the subject matter of the claimed invention of the '524 Patent is not patentable subject matter under 35 U.S.C. § 101.

77.     In addition, but without limitation, the claimed invention of the '524 Patent was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; and/or the claimed invention was described in an issued patent, or in an application for patent published or deemed published, in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

78.     In addition, the '524 Patent Applicants did not invent the subject matter sought to be patented in the '524 Patent.

79.     In addition, the subject matter sought to be patented in the '524 Patent and the prior art are such that the differences between the claimed invention and the prior art would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. The '524 Patent is therefore invalid under 35 U.S.C. §§ 102 and/or 103.

80.     The '524 Patent is also invalid under 35 U.S.C. § 112.  For instance, the claims of the '524 Patent are not enabled by or disclosed in the specification, or are indefinite.

81.     As a result of the acts described in the foregoing paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to the invalidity of the '524 Patent.

82.     Accordingly, a judicial declaration is necessary and appropriate so that Eos may (i) ascertain its rights regarding the '524 Patent and (ii) secure a judgment that the '524 Patent is not valid, including but not limited to because the '524 Patent is directed to an abstract idea not eligible for patent protection under at least 35 U.S.C. § 101.

## COUNT III – DECLARATORY JUDGMENT OF NON-INFRINGEMENT
## OF THE '806 PATENT

83.     Eos incorporates each of the preceding paragraphs 1-82 as if fully set forth herein.

84.     Eos has not infringed, is not now infringing, and has not threatened to infringe the '806 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

85.     Use of the Eos Products does not infringe the '806 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

86.     Eos has not contributed to infringement and is not now contributing to any infringement of the '806 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

87.     Eos has not induced others to infringe and is not now inducing others to infringe the '806 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

88.     Offering the Eos Products for sale does not induce others to infringe the '806 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

89.     The manufacture, use, sale or offer for sale of the Eos Products has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid or enforceable claim of the '806 Patent.

90.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

91.     A judicial declaration is necessary and appropriate so that Eos may ascertain that making, selling and using its products does not infringe the '806 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

92.     Eos is entitled to a declaratory judgment that Eos and the Eos Products do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claims of the '806 Patent under 35 U.S.C. § 271.

## COUNT IV – DECLARATORY JUDGMENT OF INVALIDITY
## OF THE '806 PATENT

93.     Eos incorporates each of the preceding paragraphs 1-92 as if fully set forth herein.

94.     Eos alleges that each of the claims of the '806 Patent is invalid for failing to comply with the conditions and requirements for patentability as set forth in Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

95.     Specifically, the subject matter of the claimed invention of the '806 Patent is not patentable subject matter under 35 U.S.C. § 101.

96.     In addition, but without limitation, the claimed invention of the '806 Patent was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; and/or the claimed invention was described in an issued patent, or in an application for patent published or deemed published, in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

97.     In addition, the '806 Patent Applicants did not invent the subject matter sought to be patented in the '806 Patent.

98.     In addition, the subject matter sought to be patented in the '806 Patent and the prior art are such that the differences between the claimed invention and the prior art would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. The '806 Patent is therefore invalid under 35 U.S.C. §§ 102 and/or 103.

99.   The '806 Patent is also invalid under 35 U.S.C. § 112.  For instance, the claims of the '806 Patent are not enabled by or disclosed in the specification, or are indefinite.

100.   As a result of the acts described in the foregoing paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to the invalidity of the '806 Patent.

101.   Accordingly, a judicial declaration is necessary and appropriate so that Eos may (i) ascertain its rights regarding the '806 Patent and (ii) secure a judgment that the '806 Patent is not valid, including but not limited to because the '806 Patent is directed to an abstract idea not eligible for patent protection under at least 35 U.S.C. § 101.

### COUNT V – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '129 PATENT

102.   Eos incorporates each of the preceding paragraphs 1-101 as if fully set forth herein.

103.   Eos has not infringed, is not now infringing, and has not threatened to infringe the '129 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

104.   Use of the Eos Products does not infringe the '129 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

105.   Eos has not contributed to infringement and is not now contributing to any infringement of the '129 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

106.   Eos has not induced others to infringe and is not now inducing others to infringe the '129 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

107.   Offering the Eos Products for sale does not induce others to infringe the '129 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

108.   The manufacture, use, sale or offer for sale of the Eos Products has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid or enforceable claim of the '129 Patent.

109.   As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

110.   A judicial declaration is necessary and appropriate so that Eos may ascertain that making, selling and using its products does not infringe the '129 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

111.   Eos is entitled to a declaratory judgment that Eos and the Eos Products do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claims of the '129 Patent under 35 U.S.C. § 271.

## COUNT VI – DECLARATORY JUDGMENT OF INVALIDITY OF THE '129 PATENT

112.   Eos incorporates each of the preceding paragraphs 1-111 as if fully set forth herein.

113.   Eos alleges that each of the claims of the '129 Patent is invalid for failing to comply with the conditions and requirements for patentability as set forth in Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

114.   Specifically, the subject matter of the claimed invention of the '129 Patent is not patentable subject matter under 35 U.S.C. § 101.

115.   In addition, but without limitation, the claimed invention of the '129 Patent was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; and/or the claimed invention was described in an issued patent, or in an application for patent published or deemed published, in

which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

116.    In addition, the '129 Patent Applicants did not invent the subject matter sought to be patented in the '129 Patent.

117.    In addition, the subject matter sought to be patented in the '129 Patent and the prior art are such that the differences between the claimed invention and the prior art would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.  The '129 Patent is therefore invalid under 35 U.S.C. §§ 102 and/or 103.

118.    The '129 Patent is also invalid under 35 U.S.C. § 112.  For instance, the claims of the '129 Patent are not enabled by or disclosed in the specification, or are indefinite.

119.    As a result of the acts described in the foregoing paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to the invalidity of the '129 Patent.

120.    Accordingly, a judicial declaration is necessary and appropriate so that Eos may (i) ascertain its rights regarding the '129 Patent and (ii) secure a judgment that the '129 Patent is not valid, including but not limited to because the '129 Patent is directed to an abstract idea not eligible for patent protection under at least 35 U.S.C. § 101.

**COUNT VII – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '112 PATENT**

121.    Eos incorporates each of the preceding paragraphs 1-120 as if fully set forth herein.

122.    Eos has not infringed, is not now infringing, and has not threatened to infringe the '112 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

123. Use of the Eos Products does not infringe the '112 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

124. Eos has not contributed to infringement and is not now contributing to any infringement of the '112 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

125. Eos has not induced others to infringe and is not now inducing others to infringe the '112 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

126. Offering the Eos Products for sale does not induce others to infringe the '112 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

127. The manufacture, use, sale or offer for sale of the Eos Products has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid or enforceable claim of the '112 Patent.

128. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

129. A judicial declaration is necessary and appropriate so that Eos may ascertain that making, selling and using its products does not infringe the '112 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

130. Eos is entitled to a declaratory judgment that Eos and the Eos Products do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claims of the '112 Patent under 35 U.S.C. § 271.

## COUNT VIII – DECLARATORY JUDGMENT OF INVALIDITY
## OF THE '112 PATENT

131.    Eos incorporates each of the preceding paragraphs 1-130 as if fully set forth herein.

132.    Eos alleges that each of the claims of the '112 Patent is invalid for failing to comply with the conditions and requirements for patentability as set forth in Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

133.    Specifically, the subject matter of the claimed invention of the '112 Patent is not patentable subject matter under 35 U.S.C. § 101.

134.    In addition, but without limitation, the claimed invention of the '112 Patent was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; and/or the claimed invention was described in an issued patent, or in an application for patent published or deemed published, in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

135.    In addition, the '112 Patent Applicants did not invent the subject matter sought to be patented in the '112 Patent.

136.    In addition, the subject matter sought to be patented in the '112 Patent and the prior art are such that the differences between the claimed invention and the prior art would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. The '112 Patent is therefore invalid under 35 U.S.C. §§ 102 and/or 103.

137.    The '112 Patent is also invalid under 35 U.S.C. § 112.  For instance, the claims of the '112 Patent are not enabled by or disclosed in the specification, or are indefinite.

138.     As a result of the acts described in the foregoing paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to the invalidity of the '112 Patent.

139.     Accordingly, a judicial declaration is necessary and appropriate so that Eos may (i) ascertain its rights regarding the '112 Patent and (ii) secure a judgment that the '112 Patent is not valid, including but not limited to because the '112 Patent is directed to an abstract idea not eligible for patent protection under at least 35 U.S.C. § 101.

### COUNT IX – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '058 PATENT

140.     Eos incorporates each of the preceding paragraphs 1-139 as if fully set forth herein.

141.     Eos has not infringed, is not now infringing, and has not threatened to infringe the '058 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

142.     Use of the Eos Products does not infringe the '058 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

143.     Eos has not contributed to infringement and is not now contributing to any infringement of the '058 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

144.     Eos has not induced others to infringe and is not now inducing others to infringe the '058 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

145.     Offering the Eos Products for sale does not induce others to infringe the '058 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

146.     The manufacture, use, sale or offer for sale of the Eos Products has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid or enforceable claim of the '058 Patent.

147.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

148.     A judicial declaration is necessary and appropriate so that Eos may ascertain that making, selling and using its products does not infringe the '058 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

149.     Eos is entitled to a declaratory judgment that Eos and the Eos Products do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claims of the '058 Patent under 35 U.S.C. § 271.

**COUNT X – DECLARATORY JUDGMENT OF INVALIDITY
OF THE '058 PATENT**

150.     Eos incorporates each of the preceding paragraphs 1-149 as if fully set forth herein.

151.     Eos alleges that each of the claims of the '058 Patent is invalid for failing to comply with the conditions and requirements for patentability as set forth in Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

152.     Specifically, the subject matter of the claimed invention of the '058 Patent is not patentable subject matter under 35 U.S.C. § 101.

153.     In addition, but without limitation, the claimed invention of the '058 Patent was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; and/or the claimed invention was described in an issued patent, or in an application for patent published or deemed published, in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

154.    In addition, the '058 Patent Applicants did not invent the subject matter sought to be patented in the '058 Patent.

155.    In addition, the subject matter sought to be patented in the '058 Patent and the prior art are such that the differences between the claimed invention and the prior art would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. The '058 Patent is therefore invalid under 35 U.S.C. §§ 102 and/or 103.

156.    The '058 Patent is also invalid under 35 U.S.C. § 112.  For instance, the claims of the '058 Patent are not enabled by or disclosed in the specification, or are indefinite.

157.    As a result of the acts described in the foregoing paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to the invalidity of the '058 Patent.

158.    Accordingly, a judicial declaration is necessary and appropriate so that Eos may (i) ascertain its rights regarding the '058 Patent and (ii) secure a judgment that the '058 Patent is not valid, including but not limited to because the '058 Patent is directed to an abstract idea not eligible for patent protection under at least 35 U.S.C. § 101.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Eos Positioning Systems, Inc. requests judgment against Defendant ProStar Geocorp, Inc., as follows:

A.    A judgment that Eos and use of the Eos Products does not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the Utility Locating Patents, in violation of 35 U.S.C. § 271;

B.    A judgment that each of the claims of the Utility Locating Patents is invalid;

C.  A judgment that the Utility Locating Patents are directed to subject matter ineligible for patent protection under 35 U.S.C. § 101;

D.  A judgment that Defendant and each of its officers, directors, agents, counsel, servants, employees, and all persons in active concert or participation with any of them, be restrained and enjoined from alleging, representing, or otherwise stating that Eos and/or the Eos Products infringe, induce infringement or contribute to the infringement of any claims of the Utility Locating Patents or from instituting or initiating any action or proceeding alleging infringement of any claims of the Utility Locating Patents against Eos or any customers, manufacturers, users, importers, distributors or sellers of the Eos Products;

E.  A judgment declaring Eos as the prevailing party and this case as exceptional, and awarding Eos its reasonable attorneys' fees, pursuant to 35 U.S.C. § 285;

F.  An award of Eos' costs and expenses in this action; and

G.  Such further and other relief as this Court may deem just and proper.

## **JURY DEMAND**

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiff Eos Positioning Systems, Inc. hereby demands a trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

Wendy R. Stein
Donald R. Bunton
CHIESA SHAHINIAN & GIANTOMASI PC
11 Times Square, 34th Floor
New York, NY  10036
(212) 324-7229

Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jying@morrisnichols.com

*Attorneys for Plaintiff Eos Positioning*
*Systems, Inc.*

February 14, 2022