# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

Jennifer Ying
(302) 351-9243
(302) 225-2570 FAX
jying@morrisnichols.com

June 15, 2022

The Honorable Maryellen Noreika            *VIA ELECTRONIC FILING*
United States District Court
for the District of Delaware
844 North King Street
Wilmington, DE 19801

      Re:    *Eos Positioning Systems, Inc. v. Prostar Geocorp, Inc.*,
              C.A. No. 22-201 (MN)

Dear Judge Noreika:

      Pursuant to the Court's April 24, 2022 Oral Order (D.I. 16) and subsequent party stipulations (D.I. 23, 24), the parties hereby enclose a proposed scheduling order for this action. The parties orally met and conferred on May 31, 2022 and on June 14, 2022, amongst ongoing communications, but were unable to reach agreement on the following provisions in the proposed schedule: Paragraphs 7(b), 8(e)(i), and 8(f)(ii).

      The parties have set forth their respective positions on each of the disputed paragraphs below.

      **1.**      **Paragraph 7(b) (Sales Figures):**

      Eos' Position: Section 7(b) of the Proposed Scheduling Order addresses Eos' production of core technical and sales documents of the Accused Products under Paragraph 4(b) of the Default Standard. The model scheduling order states that "[Eos] shall produce sales figures for the accused product(s)." However, in the present case the accused product is Eos Locate™ (*see* D.I. 17, p. 28 at ¶¶ 45), a free software application. As it is a free application, Eos does not sell the product. Accordingly, Eos proposed stating "Eos shall produce sales figures for the accused product(s), ***to the extent any exist***" (emphasis added) to avoid making any potentially confusing statement that it will produce documents. During the meet and confer process, ProStar was unable to identify any prejudice from the inclusion of this clarifying statement. Instead, for the first time less than five (5) hours before this letter was due—ProStar raised the theory of "convoyed sales." However, Paragraph 7(b) imposes no limitation on ProStar's ability to seek discovery on its newly disclosed

convoyed sales theory during discovery. The Paragraph 7(b) disclosures are narrowly directed to documents relating to the "accused product(s)."

Prostar's Position: ProStar objects to Eos adding a caveat in Paragraph 7(d) that it will produce sales figures for the accused products "to the extent such documents exist." Aside from being an unnecessary addition to the standard order, Eos has communicated that it does not sell the Accused Products, and wishes to signal that it may not have documents to provide. As the Court is aware, the purpose of this requirement is to set expectations as to the scope of the case and facilitate potential ADR discussions. By its amended Counterclaims, ProStar has explained that the Eos Locate product, along with GNSS receivers, interface with third party software applications such as ArcGIS to send and receive utility mapping data, infringing the 3 asserted patents. (D.I. 17 at ¶¶ 46-47). While it could be that there are no sales of Eos Locate (and ProStar is not yet in a position to know), it is probable that there is another source of income, for example, such as through convoyed sales or licensing. The parties will, of course, confer and raise any disputes about Eos' production at an appropriate time. For purposes of the Scheduling Order, ProStar respectfully objects to language that appears to acquiesce to Eos' non-production in advance.

### 2. Paragraph 8(e)(i) (Deposition Hours Limit):

Eos' Position: As an initial matter, ProStar's characterization of this as a "3 patent case" is inaccurate. The parties met and conferred on the inadequacies of ProStar's Covenant Not to Sue more than 3 weeks ago, and Eos is still awaiting an updated covenant before any patents are dismissed from the case. Accordingly, until the two patents for which Eos offered a covenant in response to Eos's initial 101 challenge are dismissed, this remains a case involving 5 patents and 8 inventors. Regardless, even if the parties are ultimately able to agree on the language of a Covenant Not to Sue and two of the patents are dismissed prior to discovery, Eos's request that each Party be allowed 105 hours for taking testimony by deposition is warranted because Eos has already identified 12 witnesses that will need to be deposed on the three patents; and that is before having access to ProStar discovery likely to reveal additional witnesses. ProStar's challenge to Eos's right to depose all inventors, and related argument that Eos does not need seven hours with each inventor is improper. Its further challenge to Eos's right to depose the attorneys that prosecuted the patents is also improper, as such attorneys have unique knowledge about the patents' prosecution history, a topic relevant to patent validity, scope, and claim construction. Courts have held that alleged infringers have the right to fully depose all inventors as "each inventor's contribution to the invention or the patent is relevant." *Amgen, Inc. v. Ariad Pharms., Inc.*, No. CIV.A. 06-259-MPT, 2007 WL 1425854, at *3 (D. Del. May 14, 2007) (allowing 150 hours for depositions so defendant could depose all 13 inventors); *see also Meds. Co. v. Teva Parenteral Meds., Inc.*, No. 09-750-ER, 2010 U.S. Dist. LEXIS 140356 (D. Del. Dec. 23, 2010) (ruling that each inventor could be deposed for up to 15 hours, and all inventors collectively would only count as 1 of the 24 depositions allowed per party.) Rather than supporting its assertion that "70 to 80 deposition hours per party is the norm," 40% of the cases cited by ProStar allowed for 100 or more hours of deposition time, which is what Eos has requested here. This includes ProStar's cited C.A. No. 21-150-MN (D.I. 38), in which there were also 7 inventors and the Court ordered 140 deposition hours for fact witnesses, with expert deposition time to be separate. This

The Honorable Maryellen Noreika
June 15, 2022
Page 3

is significantly more than both the 84 hours, inclusive of expert depositions, proposed by ProStar, and the 105 hours requested by Eos.

Prostar's Position: ProStar has requested 80 deposition hours, which is reasonable for a 3-patent case, consistent with F.R.C.P. 30 (10 depositions; 7 hours). In the parties' meet and confer, Eos represented that it seeks additional hours such that it has 7 hours for each of the 7 patent inventors, and also seeks to take depositions of "prosecution counsel" in this case, amongst others. There is no inequitable conduct defense asserted in this case. Notwithstanding, with respect to the number of inventors, ProStar respectfully submits that Eos is unlikely to need full days with every inventor; nevertheless, if it so elects, 70 to 80 deposition hours per party is the norm in most cases, even with many more patents and inventors. (E.g., C.A. No. 21-870-MN (D.I. 49) (6/8/22) (7 patents; 25 inventors; 100 hours per side in consolidated case); C.A. No. 22-145-MN (D.I. 24) (6/7/22) (2 patents; 4 inventors; 70 hours); C.A. No. 22-17-MN (D.I. 17) (5/23/22) (9 patents; 10 inventors; 50 hours); C.A. No. 21-150-MN (D.I. 38) (5/19/22) (5 patents; 7 inventors; 140 hours *between 2 parties*); C.A. No. 21-1807-MN (D.I. 21) (4 patents; 4 inventors; 80 hours). Eos can seek additional time if it is necessitated, and should the meet and confer process fail, move for additional time for good cause shown. ProStar respectfully submits that its proposal is the more reasonable under the circumstances, including the fact that Eos has concurrently taken the position that ProStar's patents are simple and abstract in its Section 101 motion.

**Paragraph 8(f)(ii) (Expert Declarations):**

Eos' Position: The parties' dispute centers on whether an expert may submit additional declarations in connection with case dispositive or *Daubert* briefing after the close of fact and expert discovery. Given that the proposed schedule already provides for fulsome expert disclosures, Eos does not see any need for further expert declarations at this late stage of the case. To the extent an expert has an opinion that needs to be included in summary judgment or *Daubert* briefing, it is appropriate to submit an excerpt of the relevant portions of the expert's report(s) or deposition testimony. To permit previously-undisclosed expert declarations to be filed at such a late juncture will invite motions to strike, requiring the parties to brief, among other things, whether the declaration is a mere "elaboration" under the *Pennypack* factors, which will needlessly increase costs that can be avoided by requiring the parties to confine summary judgment and *Daubert* papers to already-provided expert disclosures. Permitting ProStar to inject new opinions masked as elaboration into its opposition to any Eos motion for summary judgment will also prejudice Eos. *See TQ Delta, LLC v. Adtran, Inc.*, C.A. No. 14-954-RGA, 2021 WL 1200594, at *2 (D. Del. 2021). ProStar's cited *Dow Chemical* case does not govern this dispute, as there the party filing the late declaration was forced to add a new discussion regarding a patent that was only introduced into the litigation by its adversary after the initial deadline to file expert declarations passed.

Prostar's Position: On summary judgment, in addition to a renewed 101 motion, ProStar expects that Eos will likely raise 112 issues; expert opinion will be important to ProStar's defense of these issues (e.g., to establish what was routine and conventional, and what persons of ordinary skill in the art would understand the patents to disclose). Expert testimony is perhaps needed the most on a *Daubert* challenge, where the sufficiency of an expert opinion must be addressed by a comparable expert. ProStar respectfully submits that it is customary for experts to submit

The Honorable Maryellen Noreika
June 15, 2022
Page 4

declarations in connection with *Daubert* and summary judgment filings. It is the most efficient way to present the experts' opinions to the Court, compared to submitting voluminous expert reports that are not distilled to the issues as presented on summary judgment motions. Neither party is permitted to exceed the reasonable scope of an expert's opinion (reports and depositions) in such a declaration, though they can fairly provide appropriate elaboration. *See e.g. Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, No. CIV.A. 05-737-JJF, 2010 WL 2044931, at *2 (D. Del. May 20, 2010) ("The Court concludes that the subject declarations only elaborate and therefore, should not be excluded.") In short, to the extent that either side believes an expert declaration goes beyond the permissible scope, the Court's motion to strike procedure can be utilized. ProStar respectfully submits that appropriate safeguards are in place, and declarations do not prejudice Eos, and thus should be permitted.

* * *

Counsel is available at the Court's convenience should the Court have any questions.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

JY:lo
Attachment
cc: Clerk of the Court (via hand delivery)
All Counsel of Record (via CM/ECF and e-mail)