IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EOS POSITIONING SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-201 (MN) |
| | ) | |
| PROSTAR GEOCORP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

At Wilmington this 30th day of March 2023:

As announced at the hearing on March 20, 2023, IT IS HEREBY ORDERED that:

1.      Eos Positioning Systems, Inc.'s ("Plaintiff") Motion to Dismiss for Failure to State a Claim (D.I. 19) is DENIED.

Plaintiff moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that the claims of U.S. Patent Nos. 7,834,806 ("the '806 patent"), 8,8081,112 ("the '112 patent"), and 7,978,129 ("the '129 patent") are invalid as claiming ineligible subject matter under 35 U.S.C. § 101.  Plaintiff's motion was fully briefed as of July 1, 2022,[1] and the Court received further submissions regarding supplemental authority from Plaintiff.  (*See* D.I. 33).  The Court received further submissions regarding which Supreme Court or Federal Circuit case each party contends is analogous to the claims at issue in Plaintiff's motion as related to the § 101 arguments. (*See* D.I. 55, 56).  The Court carefully reviewed all submissions in connection with Plaintiff's motions, heard oral argument (D.I. 63), and applied the following legal standard in reaching its decision.

---

[1]      (*See* D.I. 20, 25, 30).

I.     **LEGAL STANDARDS**

A.     Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008).  "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification."  *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)).  Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

B.     Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent.  35 U.S.C. § 101.  The Supreme Court has recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101:  laws of nature, physical phenomena, and abstract ideas.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  These exceptions "are 'the basic tools of scientific and technological work' that

lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216. A claim to any one of these exceptions is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 573 U.S. at 217. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims at issue are directed to a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

1.   Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject

matter).  In addressing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature.  *Alice*, 573 U.S. at 217; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).  "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'"  *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

2.    Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more."  *Alice*, 573 U.S. at 218; *see also McRO*, 837 F.3d at 1312.  This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'"  *Berkheimer*, 881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73.  "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).  Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact.  *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101."  *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, No. 17-965-LPS-CJB, 2018

WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

## II.   THE COURT'S RULING

The ruling on Plaintiff's motion to dismiss[2] under Rule 12(b)(6) was announced from the bench at the conclusion of the hearing as follows:

> Thank you for the arguments today. I am prepared to rule on the pending motion. I will not be issuing a written opinion, but I will issue an order stating my ruling. I want to emphasize that although I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. There was briefing on the pending motion, there were additional submissions discussing what each party viewed as the most analogous case and there has been oral argument here today. All of the submissions and the arguments have been considered.

> As to the law, I am not going to read into the record my understanding of Section 101 law or the applicable pleading standards. I have a legal standard section that I have included in earlier orders, including in *Northwestern University v. Universal Robots A/S et al.*, No. 21-149. I incorporate that law and adopt it into my ruling today and I will also set it out in the order that I issue.

> Now as to my rulings. There are three patents[3] [U.S. Patent Nos. 7,834,806, 8,8081,112, and 7,978,129] asserted in the complaint and amended counterclaims. Two of the patents, the '806 patent and the '112 patent share a specification. All of the patents relate to managing utility assets through precise utility location.

> Plaintiff has moved to dismiss Defendant's amended counterclaims pursuant to Rule 12(b)(6), arguing that the asserted claims are directed to an abstract idea and lack inventive concepts sufficient to render them patent eligible under § 101.

---

2      (D.I. 19).

3      Plaintiff originally sought declaratory judgment of invalidity and non-infringement of five patents and Defendant counterclaimed alleging infringement and validity on all patents. The parties have since dismissed two patents from this case.  (D.I. 29).

First, I want to address representativeness of the claims discussed. In the briefing, Plaintiff treats claim 11 of the '806 patent and claim 7 of the '112 patent as representative.[4]   In its brief, Defendant does not challenge the representativeness of these claims[5] and Defendant confirmed today that it is not challenging that representativeness for the '806 patent and the '112 patent.[6] Given that agreement and because I find that the claims are substantially similar and nothing I've seen or heard suggests those claims are not representative, I will accept that those claims are representative of the other claims of those respective patents.

[Claim 11 of the '806 patent recites:

11. A system for collecting utility location information comprising:

> GPS receiver for identifying a current location;

> a processor configured to process input data for defining a project including a project area, project criteria, rules applied to the project and data accessibility rights, retrieve a GIS landbase template including map imagery and infrastructure from a database, and integrate an imagery of the project area with the current location to generate an image representation of the project area in real time;

> a display for displaying the image representation of the project area comprising the current location as a moving map;

> a location determining device for obtaining the location of an identified utility asset in accordance with the displayed representation of the project area, wherein the processor is further configured to integrate the obtained location with the GIS landbase template including the map imagery and the

---

4        (D.I. 20 at 13-14, 15).

5        (D.I. 25 at 7).

6        *See*, *e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.").

infrastructure to create a precision grid including the location of the utility asset the map imagery and the infrastructure;

a first database for storing the precision grid; and

a database management module for managing usage and distribution of the stored precision grid utilizing the defined project criteria, rules applied to the project and data accessibility rights.

Claim 7 of the '112 patent recites:

7. A system for collecting information related to utility assets comprising:

an underground imaging device for determining a position of an underground utility asset;

a GPS receiver for generating location data for the underground utility asset;

a processor configured to integrate the location data with the determined position of the underground utility asset in substantially real time to provide information about depth, longitudinal and latitudinal coordinates of the position of the underground utility asset, and add characteristics of the underground utility asset including a size of the underground utility asset, to the integrated data to generate one or more data records for the underground utility asset;

a database for storing landbase data, wherein the processor is further configured to integrate the landbase data with the one or more data records for the underground utility asset in substantially real time; and

a display for displaying a scrolling map including the one or more data records and a portion of the landbase data.]

As to the '129 patent, in the briefing Plaintiff treats claim 12 as representative.[7]    Defendant    expressly    challenged

---

7      (D.I. 20 at 12).

representativeness because claim 12 lacks certain limitations found in other asserted claims.[8]  In its brief, Defendant does not treat any claims as representative, but does imply that claim 8 of the '129 patent could be representative.[9]  In its reply brief, Plaintiff stated that it would accept claim 8 as representative.[10]  Today, Defendant agreed that claim 8 of the '129 patent is representative.[11]  I will accept it as being representative.

[Claim 8, which is dependent on claim 4 of the '129 patent recites:

8. The method of claim 4, further comprising creating a movable map from the precision integrated grid and displaying the movable map in real time for showing the location of the user in relation to a utility.

Claim 4, which is dependent on claim 1 of the '129 patent recites:

4. The method of claim 1, further comprising generation a precision integrated grid from the GIS data transaction.

Claim 1 of the '129 patent recites:

1. A method for generating a GIS data transaction including information about a topography of a region and utilities within the region, the method comprising:

providing information about the topography of the region;

receiving information about a user collecting data related to one or more utilities in the region;

receiving information about time and date of the collected data;

receiving information about each of the utilities;

---

8        (D.I. 25 at 7) ("Yet Eos's 'representative' claim for the '129 Patent, claim 12, is missing the 'real time' limitation found in claim 15 and the 'GIS data transactions' found in claim 17").

9        (*See* D.I. 25 at 13).

10       (D.I. 30 at 3).

11       (D.I. 63 at 27:6-8).

receiving information about location of each of
the utilities;

receiving information about the manner of
collecting data;

receiving information about revisions made to
the information about the topography; and

integrating the received information with the
information about the topography of the region
into a GIS data transaction.]

Let's go to step 1 of *Alice*. Plaintiff contends that the patents
are directed to "the abstract idea of utility locating implemented on
conventional devices."[12] Specifically, Plaintiff argues that the '129
patent is "directed to the abstract idea of receiving, storing, and
displaying data applied to the field of utility locate operations,"[13]
and the '806 and '112 patents are "directed to the abstract idea of
storing and displaying data applied to the field of utility locate
operations."[14] Plaintiff characterizes the patents as using generic
devices as tools to collect, analyze, and display data for more precise
utility location. As Plaintiff points out, humans have been
performing utility locate operations for over a century.[15] Thus, to
Plaintiff, the asserted Patents only automate "the longstanding
business practice of utility locate operations."[16]

Plaintiff identified *Move, Inc. v. Real Estate Alliance Ltd.*,
721 F. App'x 950 (Fed. Cir. 2018) as its most analogous case.[17] In
*Move*, the patents claimed methods of modifying the location and
view of a displayed map with a conventional computer based on
human input. The Federal Circuit found the patents were directed
to the "abstract idea of 'collecting and organizing information about
available real estate properties and displaying this information on a
digital map that can be manipulated by the user.'"[18] The patents
claimed a method of storing property locations in a geographical

---

[12]   (D.I. 20 at 2).

[13]   (*Id.* at 12).

[14]   (*Id.* at 13-14, 15).

[15]   (*Id.* at 9).

[16]   (*Id.* at 8).

[17]   (D.I. 56).

[18]   *Move*, 721 F. App'x at 953-54.

region, displaying a zoomed in area of the geographical area in digital map form, generating a plurality of points from the stored property locations, and using those points to identify and locate the properties in the region. According to Plaintiff, the claims here similarly recite a method collecting and organizing information about a geographical location and display them on a map, and any technological improvements touted by Defendant are not explained in the patents, but rather only recite a result.

Plaintiff also relies on *CertusView Techs., LLC v. S & N Locating Servs., LLC*, 111 F. Supp. 3d 688, *aff'd*, 695 F. App'x 574 heavily in its briefing and here today to argue that the claims are directed to an abstract idea. In Plaintiff's view, the claims here are indistinguishable from that case. In *CertusView*, the claims were directed to systems and methods for utility locate operations, where the claims recited electronically receiving an image of the dig area and displaying the image, adding to the image a physical location mark of a utility, and electronically transmitting or storing the information in a computer readable device. At step 1, the court found the claims to be directed to the abstract ideas of "creating a computer readable file to store information," "electronically transmitting or storing information," and "electronically displaying information" "as applied in the particular technological environment of conducting a locate operation."[19] According to the court, the claim elements "embrace[d] the abstract process of taking input information, in the form of an image; displaying it; adding additional information to it—the representation of the physical locate marks; and storing such information in a computer readable file."[20] In Plaintiff's view, the claims here are no different as the claims in *CertusView* mirror the same type of data recited in the claims here, such "a map of a geographical region," "a user collecting data," "data related to each of the utilities," "location of each of the utilities," and "revisions made to the information," drafted largely in functional terms and using only generic computer technology.[21]

Defendant argues that the inventions claimed in the patents are an improvement to the technology used in utility locate operations and that the claims, as a whole, are directed to an improved technique and improved capabilities – *i.e.* the claims provide "a new 'way' to locate utilities, by combining precise

---

[19]  *CertusView*, 111 F. Supp. 3d at 708, 718, 722, 724 and 728.

[20]  (*Id.* at 709).

[21]  ('129 Pat. 10:50-61).

database entry with the generation of a precise moveable map in real-time—a specific combination resulting in not only a novel system, but one with improved capability over any individual component parts."[22] In particular, Defendant argues that the claimed inventions are "directed to an improved method of capturing, integrating and displaying utility data via a 'precision integrated grid' and 'moveable map' in 'real time.'"[23] Plaintiff analogizes the claims to the patents in *TakaDu Ltd. v. Innovyze, Inc.*, C.A. No. 21-291-RGA, 2022 WL 684409 (D. Del. Mar. 8, 2022),[24] where Judge Andrews found the claims were "directed to methods and systems for analyzing and using geographical information system (GIS) data, asset management data, and sen[s]or archive data of one or more assets to improve resource network operation and monitoring," and "analyze[d] GIS data to gain insight into the performance of a utility network," which was not an abstract idea.[25]

Focusing first on claim 8 of the '129 patent, unlike *TakaDu*, claim 8 viewed as a whole is not directed to an improvement in the functioning of technology – rather, the focus of the claim is on using generic technology to implement the abstract idea of receiving, storing, and displaying data as applied to the particular technological field of utility locate operations.  That is, claim 8 does not seem analogous to *TakaDu* because there, the claims recited a detailed statistical method for predicting what the data should look like, and identifying leaks based on those predictions and the court found the statistical analysis and manipulation of the GIS data to be a technological improvement.  Here, however, the patents do not claim any statistical analysis or manipulation of data.  Instead, the patents claim human behaviors of gathering location data, marking the location on a map, and then displaying the map, rather than improvements in the technical operation of utility location.

I agree with Plaintiff that claim 8 of the '129 patent is much more akin to the claims at issue in *Move* and *CertusView*, at least for my analysis in step one.  The claims at issue in those cases were aimed at using technology to make human behavior easier or more efficient – collecting, organizing, and displaying information about available real estate properties in *Move* and electronically transmitting, storing or displaying information in utility locate

---

22      (D.I. 25 at 9).

23      (*Id.*).

24      (D.I. 25 at 10).

25      *TakaDu*, 2022 WL 684409 at *4.

operations in *CertusView*. Moreover, those claims were broad and drafted in largely functional terms, suggesting that the focus of the claims at issue was largely on a result rather than how to achieve that result – an indicator that a claim is directed to an abstract idea. Here, claim 8 of the '129 patent is drafted broadly and focused on the result of storing collected data about a utility and generating a precision integration grid with the stored information, and displaying it on a map. The purported "new way" to locate utilities is not readily apparent from the claim language, and the claim is more focused on automating location data as opposed to having a human draw it by hand. In sum, I find that claim 8 is directed to the abstract idea of receiving, storing, and displaying data applied to the field of utility locate operations.

Turning to step two of the analysis, Plaintiff argues that the claims of the '129 patent use only generic devices in known ways to perform utility locate operations. Plaintiff emphasizes that the '129 patent discloses a generic computer and already existing technology that is used to collect, store, and display data in utility operations, and there is no description of how the improved functionality is achieved.

Defendant asserts that the '129 patent claims recite an unconventional arrangement of components sufficient to confer an inventive concept to the otherwise abstract idea of receiving, storing, and displaying data applied to the field of utility locate operations. In particular, Defendant emphasizes that the real time requirement, precision integration grid, and movable or scrollable map as something other than routine, well-known, or conventional.[26] According to Defendant, these elements provide a unique combination that overcome deficiencies in the prior art.

Defendant points to *BASCOM*[27] as an analogous case, where at step two, the Federal Circuit found the challenged claims contained an inventive concept.[28] *BASCOM* involved claims related to filtering content on the internet, which the Federal Circuit found was an abstract idea. At step two, however, the Federal Circuit found the inventive concept in the "non-conventional and non-generic arrangement of known, conventional pieces" that improved over the prior art and did not preempt all ways of

---

[26]   (D.I. 25 at 14-17).

[27]   *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016).

[28]   (D.I. 55).

filtering.[29]  Defendant asserts the claims here are similar, as the asserted claims have a unique combination of elements that overcome the prior art.

I agree with Defendant that this case is analogous to *BASCOM* at least as pleaded.  In its counterclaims, Defendant includes a number of allegations that plausibly suggest the real time and precision integration functionality into the moving or scrolling maps was accomplished in an unconventional way.[30]  Nothing in the '129 patent contradicts these allegations.  Under *Berkheimer*, whether the claim elements and their ordered combination is simply well known, routine and conventional is a question of fact and, in this case, because there are plausible factual allegations as to the unconventionality of the real time, precision integration and scrolling or movable maps elements, there is a factual dispute that precludes dismissal.[31]

I do not agree that Defendant's pleading must point to portions of the specification that support its contention that certain limitations are not well understood, routine or conventional.  At the motion to dismiss stage, *Aatrix* requires me to resolve plausibly alleged factual issues in favor of the patentee at step two.  This means that if Defendant includes in its counterclaim plausible factual allegations that support the conclusion that the claim elements or their ordered combination were not well-understood, routine or conventional and there is nothing in the record that I can properly consider on a motion to dismiss that contradicts those allegations, then those factual issues must be decided in favor of Defendant.[32]

---

29    *BASCOM*, 827 F.3d at 1350.

30    (*See* D.I. 17 at ¶¶ 35-39).

31    *Berkheimer*, 881 F.3d at 1368.

32    *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127-28 (Fed. Cir. 2018) ("Viewed in favor of Aatrix, as the district court must at the Rule 12(b)(6) stage, the complaint alleges that the claimed combination improves the functioning and operation of the computer itself.  These allegations, if accepted as true, contradict the district court's conclusion that the claimed combination was conventional or routine.  Therefore, it was an abuse of discretion for the district court to deny leave to amend. . . .  Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact.  And in this case, that question cannot be answered adversely to the patentee based on the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice.").

Thus, at step two, I cannot conclude that the claim elements or their ordered combination are well known, routine and conventional activities known in the art, thereby failing to confer an inventive concept. Given the constraints of *Berkheimer*[33] and *Aatrix*[34], I cannot resolve this question today in light of Defendant's plausible factual allegations in the counterclaims that are uncontradicted by the '129 Patent or anything else I can properly consider at this stage.[35] Plaintiff's motion with respect to the '129 patent is denied with leave to renew at summary judgment to the extent there are no factual issues precluding resolution of the § 101 issues at that time.

Turning now to the '112 and '806 patents, I reach the same conclusions for the reasons I just explained for the '129 patent. I do so because the parties largely analyze the three patents together and similarly under § 101. In its opening brief, Plaintiff analyzes the three patents separately, but states the claims for the '112 and '806 patents are similar and its argument for the '129 patent is also similar.[36] Defendant lumps all the patents together in its answer.[37] Neither party asserts that there is any meaningful difference among the patents. Plaintiff's motion with respect to the '112 and '806 patents is therefore also denied with leave to renew at summary judgment to the extent there are no factual issues precluding resolution of the § 101 issues at that time.

(D.I. 63).

The Honorable Maryellen Noreika
United States District Judge

---

[33]    *Berkheimer*, 881 F.3d at 1368.

[34]    *Aatrix*, 882 F.3d at 1127-28.

[35]    For portions of its argument, Plaintiff relies on statements made by inventor Page Tucker during an interview and asks the Court to take judicial notice of the interview because it is a public interview and an admission by a party opponent. (D.I. 20 at 8). Plaintiff does not cite to any cases where a court took judicial notice of an interview on a motion to dismiss for patent ineligibility. Moreover, Plaintiff attempts to use these statements for the truth of the matter asserted, indicating more discovery would be beneficial in this case, and a finding of patent ineligibility under § 101 at this stage would be premature.

[36]    (D.I. 20 at 12-15, 17-20).

[37]    (D.I. 25 at 8-17).